**Anne Droop MAGUIRE and the Estate of Mary Graff Bowie, Residuary Legatees, Appellants,**

v.

**W. Calhoun STIRLING and E. Tillman Stirling, Executors of the Estate of Elizabeth Graff Stirling, Deceased, Appellees.**

**No. 17238.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 22, 1963.

Decided March 14, 1963.

Petition for Rehearing En Banc and Petition for Rehearing Before the Division Denied April 17, 1963.

Mr. E. William Furey, Washington, D. C., with whom Mr. Thomas R. Dyson, Jr., Washington, D. C., was on the brief, for appellants.

Mr. E. Tillman Stirling, Washington, D. C., for appellees.

Before BAZELON, Chief Judge, and EDGERTON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a will case. The executors of the estate of Elizabeth Graff Stirling, deceased, filed a Second and Final Account on May 9, 1962, in probate proceedings in the United States District Court for the District of Columbia. Two of the three residuary legatees under the will filed objections to the account. These were denied by the District Court, and the objectors have appealed.

Mrs. Stirling died on August 17, 1960. Her will was admitted to probate shortly thereafter. Dr. William Calhoun Stirling, surviving spouse of the testatrix, and E. Tillman Stirling, his son, were

named as executors. The clause of the will which is basic in the present controversy provides as follows:

"FIFTH: I give and bequeath to my husband, DR. WILLIAM CALHOUN STIRLING, if he shall survive me, whichever of the following amounts shall be the greater, viz., (a) one-half ½ of my adjusted gross estate, as hereinafter defined, or (b) the sum of Five hundred thousand Dollars ($500,000.00), and I direct that such bequest shall take priority over all other bequests and devises provided for in this Will. The term 'adjusted gross estate' as used in this Article Fifth of my Will shall be defined as the difference between (1) the amount of my gross estate passing under this my Will, or any Codicil hereto, less the gifts and bequests provided in Articles Third and Fourth of this my Will, valued as of the date of my death, and (2) the amount of all debts, funeral, testamentary and administration expenses exclusive of any inheritance, estate or similar taxes."

The executors, in their Second and Final Account, included the following item as distributable:

"To Dr. William Calhoun Stirling one-half (½) of adjusted gross estate as defined in Article Fifth of Will

| | | |
|---|---:|---:|
| Amount of gross estate passing under will | | |
| Personal property | | $1,200,111.68 |
| Real estate, 2024 R Street, N. W., Washington, D. C., at appraised value | | 40,000.00 |
| | | $1,240,111.68 |
| Less gifts and bequests Article Third (Household effects, jewelry and automobile) | $ 9,069.00 | |
| Article Fourth (Real Estate) | 40,000.00 | 49,069.00 |
| | | $1,191,042.68 |
| Less: Debts, funeral and administration expenses | | 55,799.50 |
| | | $1,135,243.18 |
| One-half to Dr. William Calhoun Stirling | | $567,621.59" |

The objecting residuary legatees, appellants here, agree that $567,621.59 is due Dr. Stirling under Article Fifth of the will as a proper computation of the amount of the bequest to him. Their complaint is directed to an item appearing later under "Schedule C" in the Account showing an additional sum of $168,145.86 as being due Dr. Stirling. The schedule is headed "Computation of Share of W. Calhoun Stirling of Income during Administration, Loss on Sale of Securities and Increment in Value of Securities." It shows that during the period of administration the estate received $71,603.84 in dividends and interest, that it sustained a loss of $18,405.53 on the sale of securities, and that the market value of its investments increased by $198,378.94. After deducting certain expenses totaling $21,580,27, the net figure on the schedule is $229,996.98. Dr. Stirling claimed 73% of this amount, leaving 27% for the residuary legatees, on the basis that his share of the principal assets ($567,621.59) is in the ratio

of 73–27 to the share of the principal assets received by the residuary legatees.

Dr. Stirling's contention is that the testatrix intended to give him outright one-half of her adjusted gross estate, since its value at the date of death was in excess of $500,000, and that the executors' treatment of the residuary legatees carries out this intention. But his argument overlooks what the testatrix in fact gave him.

Under the language of Article Fifth of the will, Dr. Stirling was not given specific securities, and he was not given one-half of the adjusted gross estate. He was given whichever of two "amounts" was the greater: $500,000, or [the amount of] one-half of the adjusted gross estate, defined as consisting of the "amount" of the gross estate passing under the will, valued at the date of death, less the "amount" of certain debts and expenses. Both the reference to the "amount of my gross estate" and the reference to the "amount" of debts and expenses clearly are to amounts expressed in dollars, and both are the essential and only elements in determining the "adjusted gross estate," necessarily identifying it as an amount in terms of dollars rather than property. The testatrix's gift to her husband of "whichever of the following amounts shall be the greater" thus falls into place. She gave the greater of two amounts: one-half of the dollar value of her adjusted gross estate valued at death, or $500,000. This to us is the plain sense of the language used by the testatrix. She gave her husband a general legacy.[1]

So construed Article Fifth can give Dr. Stirling no right to share in net income from, or net increments to the value of, undistributed assets during the period of administration. Nor is there any other provision of the will purporting to give him such an interest. In the absence of such a provision, these items are properly distributable to those who take the residue of the estate. See 6 Page on Wills 424 et seq. (Bowe-Parker Rev. 1962). Dr. Stirling was not named as a residuary legatee and has no right to share in the residuary estate.

It may also be noted that the valuation date stated in the will, i. e., the date of death, was undoubtedly a carefully chosen one. Its use permitted the determination of the amount in dollars of Dr. Stirling's legacy with precision at the testatrix's death. So fixed, it had "priority over all other bequests and devises" under the will.[2] If the market had fallen, Dr. Stirling would still have been entitled to the amount so fixed, assuming assets to be available, even though all other legatees, specific and residuary, received nothing. When (as it happened) the market went up, the amount of his legacy did not correspondingly increase. But this was not necessarily a disadvantage. As one of the executors, he might have accelerated the administration of the estate and the distribution of its assets, so as to put into his own hands (and hence his own risk) the legacy given him, without delay. But he did not do so. Instead he allowed the residuary legatees to take the risk of a market drop during administration, and now seeks to deprive them of a major part of the benefits of a market rise. This the will does not permit him to do.

The order of the District Court approving the Second and Final Account is reversed and the cause remanded for further proceedings consistent with this opinion.

So ordered.

---

1. Cf. Armstead v. Union Trust Co. of the District of Columbia, 61 App.D.C. 269, 61 F.2d 677 (1932); 6 Page on Wills 7 et seq. (Bowe-Parker Rev.1962).

2. If the legacy had not been so fixed in amount, it would appear that the executors would have been severely hampered in administering the estate and at the same time preserving the priority of the legacy.